**Joe E. COOPER,**
**Plaintiff–Appellee/Cross–Appellant,**

v.

**ASPLUNDH TREE EXPERT COMPANY,**
**Defendant–Appellant/Cross–Appellee.**

Nos. 85–2316, 85–2369.

United States Court of Appeals,
Tenth Circuit.

Jan. 15, 1988.

Richard G. McManus, Jr., of Miles, McManus & Epstein, Denver, Colo., for defendant-appellant/cross-appellee Asplundh Tree Expert Co.

Jeffrey Menter, Denver, Colo., for plaintiff-appellee/cross-appellant Joe E. Cooper.

Before LOGAN, BARRETT, and ANDERSON, Circuit Judges.

LOGAN, Circuit Judge.

Joe E. Cooper brought this action against his former employer, Asplundh Tree Expert Company (Asplundh), under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, alleging that Asplundh willfully discriminated against Cooper in firing him. A jury, answering special interrogatories, found both that Asplundh intentionally discriminated against Cooper and that such discrimination was willful. The district court denied Asplundh's motion for judgment n.o.v. and subsequently entered judgment for Cooper in the amount of $32,000 for back pay, an additional $32,000 in liquidated damages, $63,000 in front pay, and $12,255 in attorney's fees. Both parties have appealed.

On appeal Asplundh challenges the sufficiency of the evidence to support the jury's verdict on liability and willfulness. Asplundh alleges that the trial court erred when it allowed the testimony of a witness who was not listed on the court's pretrial

order, when it permitted that witness to testify about another witness' reputation for truthfulness, and when it allowed Cooper's counsel to read during closing argument from an affidavit not admitted into evidence. Asplundh also asserts that the trial court improperly awarded front pay, erred in not setting off an arbitral award previously entered in Cooper's favor, erred in not setting off Cooper's unemployment compensation, and improperly awarded attorney's fees.

Cooper, on cross-appeal, argues that the district court improperly refused to award liquidated damages in connection with his front pay award.

# I

■ In reviewing a district court's denial of a motion for a judgment n.o.v., we may find error only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made. *EEOC v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166, 1171 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). While a scintilla of evidence is not enough, we must affirm if evidence was before the jury upon which it could properly find against the movant. *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 499 (10th Cir.1984).

■ An employee alleging intentional discrimination under the ADEA must prove that age was a "determinative factor" in the defendant employer's action toward him. *Prudential*, 763 F.2d at 1171. Age need not be the *sole* reason for the employer's acts, but plaintiff must show that age "made a difference" in the employer's decision. *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984).

■ The proof scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248,

252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), applies here. As adapted to an age discrimination[1] discharge claim, a plaintiff establishes a prima facie case by showing "(1) he is within the protected age group, (2) he was doing satisfactory work, (3) he was discharged despite the adequacy of his work, and (4) his position was filled by a person younger than he." *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir.1986). The burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the challenged action. *Id.* The plaintiff retains the ultimate burden of persuasion, which he may carry directly by proving that age was more likely than not a determinative factor in the employment decision, or indirectly by establishing that the employer's proffered explanation is mere pretext. *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1542 (10th Cir.1987).

■ Cooper worked at Asplundh as a foreman from shortly after his hiring in 1966 until his discharge on January 24, 1984. He was forty-nine years old when discharged and was replaced by a worker thirty-two or thirty-three years old. On appeal, only the interrelated second and third elements of the test elucidated above are in issue—whether Cooper was doing satisfactory work at the time of his discharge. Asplundh presented undisputed evidence that Cooper violated company rules by, *inter alia*, buying food during working hours, wearing spikes while climbing live trees in violation of a Denver ordinance, using personal vehicles on the job site, and failing to have his crew wear hard hats on the job site.

Cooper, however, countered with testimony that Asplundh did not uniformly enforce these rules, thereby raising the inference that Asplundh selectively enforced its rules against Cooper and that the rules were but a pretext to mask age discrimination. Cooper testified that Asplundh had not criticized other crews which bought food during working hours, and Asplundh employ-

---

**1.** Although both *McDonnell–Douglas* and *Burdine* were Title VII cases, courts apply their proof scheme in age discrimination cases as well. *See EEOC v. University of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986).

ees Orville Puterbaugh and Dean Tygrett testified that they did not believe such action violated company policy. Kenneth Williams, who replaced Cooper, testified that he himself wore spikes on live trees in Denver as a safety measure. Puterbaugh testified that company practice was to wear spikes for safety. Puterbaugh further testified that Asplundh did not uniformly enforce its rules against using personal vehicles at job sites and that John Maxwell, an Asplundh supervisor, had told workers they need not wear hard hats. Finally, Cooper countered Asplundh's evidence that his work was sub-par with testimony from three disinterested witnesses that his work was average or better. A Public Service Company report showed Cooper's crew average or above average in most areas. Cooper's evidence, if believed, adequately established the second and third elements of a prima facie case—that Cooper was doing satisfactory work but was nevertheless discharged.

After Asplundh produced evidence that reasonable factors other than age—Cooper's violation of work rules and poor attitude toward management—motivated its decision, Cooper presented sufficient evidence to satisfy his ultimate burden of proof. Steve Kershman, an Asplundh supervisor, admitted at trial that he had remarked that "guys forty years old are too old to work here." II R. 123. While Kershman testified that he made this remark only in jest, another Asplundh employee, Gerald Lopez, testified that Kershman had, in all seriousness, said words to the effect that "people over forty should be fired or gotten rid of." III R. 223.[2] Lopez also testified that Kershman favored younger workers, and that he thought age had something to do with Cooper's termination. Cooper testified that in December 1982 Maxwell had described another worker who was over fifty as "just too old for the job," II R. 39. In addition, both Puterbaugh and Hansen testified that Maxwell commented about problems with older workers. We therefore conclude that Cooper presented sufficient evidence that age was a "determinative factor" in his dismissal to support the jury's verdict.

## II

Asplundh next challenges the sufficiency of the evidence supporting the jury's finding of a willful violation. The ADEA provides that a plaintiff may recover double or liquidated damages whenever an employer "willfully" violates the Act. 29 U.S.C. § 626(b).

Courts have long struggled to define "willful" under the ADEA.[3] The Supreme Court recently illuminated the issue in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 85 L.Ed.2d 523 (1985). In *Thurston*, the Court addressed a claim that TWA's personnel reduction policy violated the ADEA. This policy allowed captains under sixty years of age to transfer to the position of flight engineer and, if necessary, to "bump" less senior flight engineers in order to retain a position with TWA. Captains sixty years of age or older were not allowed to transfer to flight engineer positions and were terminated. The Court held that this policy violated the ADEA but concluded that it was not willful. In finding TWA's acts not willful, the Court noted that Congress intended liquidated damages to be "punitive in nature," *id.* at 125, 105 S.Ct. at 624, and desired a two-tiered liability scheme, with liquidated damages available only for more serious violations. The Court adopted the standard that a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128, 105 S.Ct. at 625. The Court concluded that TWA's discrimination was not

2. Even if the jury found these statements to have been made in jest, "a reasonable juror could infer that they were meant to be disparaging, regardless of their tone." *Smith v. Consolidated Mutual Water Co.*, 787 F.2d 1441, 1442 n. * (10th Cir.1986).

3. See Note, *Liquidated Damages and Statute of Limitations Under the "Willful" Standard of the Fair Labor Standards Act and Age Discrimination in Employment Act: Repercussions of* Trans World Airlines, Inc. v. Thurston, 1985 Washburn L.J. 516, 531–36 (describing various pre-*Thurston* standards).

willful because it adopted its retirement policy only after meeting with its lawyers and union officials to determine the legality of the plan. Because TWA officials acted "reasonably and in good faith" in attempting to see whether their plan would violate the ADEA, no willful violation occurred.

*Thurston* involved a company-wide plan or policy that adversely affected a segment of the work force. In this adverse impact context, the "knew or reckless disregard" standard is particularly useful. A court must focus upon whether the employer formulated its policy in good faith after research and inquiry and in the belief that it comported with the ADEA, or whether the employer made its policy knowing that it violated the ADEA or in reckless disregard of the Act. *See, e.g., EEOC v. Wyoming Retirement System*, 771 F.2d 1425, 1431 (10th Cir.1985) (liquidated damages inappropriate when defendant relied in good faith on state Attorney General's advice that retirement statute met requirements of ADEA); *Kossman v. Calumet County*, 800 F.2d 697, 702 (7th Cir.1986) (when Attorney General warned county of illegality of retirement plan, county's knowledge of warning made violation willful), *cert. denied*, ── U.S. ──, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987).

The *Thurston* standard is less useful in situations like the one before us, a disparate treatment case in which an individual employee alleges intentional discrimination aimed specifically at him. The problem involves distinguishing a merely "intentional" violation, which is part of every finding of liability, from a "willful" violation, which imposes double damages. If a court applies the *Thurston* "knew or reckless disregard" standard to such individual claims of disparate treatment, arguably almost every finding of liability will also support a finding of willfulness. As the Court noted in *Thurston*, "As employers are required [by 29 U.S.C. § 627] to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability." 469 U.S. at 128, 105 S.Ct. at 625.

In order for an employer to be liable in a disparate treatment case, the factfinder must find an intent to discriminate. Thus, the *Thurston* defense that an employer's reasonable and good faith acts might preclude a willfulness claim is unavailable. The Eleventh Circuit has considered this problem and noted, "[t]here is no logical way to square a finding of intentional discrimination with a finding of good faith on the employer's part." *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1100 (11th Cir.1987); *see also Powell v. Rockwell International Corp.*, 788 F.2d 279, 286 n. 6 (5th Cir.1986) ("any assertion that [employer] acted in good faith in terminating [employee] and that its actions were not in reckless or knowing violation of the ADEA was rejected by the jury when the jury found that the justifications for firing [employee] offered by [employer] were pretextual."); *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 84–85 (2d Cir.1983) (employer who knew it would violate the ADEA to fire plaintiff because of age "voluntarily and knowingly violated the law" by doing so).

In *Lindsey* the court upheld a willfulness finding when the jury found that the employer had intentionally failed to promote the plaintiff because of his age. The record showed that defendant knew at the time of the discrimination that such acts violated the ADEA. The court "hesitate[d] to hold" that every plaintiff who shows intentional discrimination is automatically entitled to liquidated damages, *id.*, 810 F.2d at 1100, but it ruled that the jury's finding of intentional discrimination under a proper instruction coupled with the defendant's admission of knowledge of the ADEA prohibition precluded a finding of employer good faith. *See also Spanier v. Morrison's Management Services, Inc.*, 822 F.2d 975, 981 (11th Cir.1987) (Hill, J., concurring) ("In studying the ADEA and cases brought under it, I have concluded that where a defendant loses a typical case [in which discrete personnel actions are directed at one employee], the employer has necessarily been found guilty of a willful violation of the ADEA....").

The Third Circuit recently adopted a different standard for willfulness in disparate treatment cases. Noting that Congress intended to create a two-tiered liability scheme, and focusing on *Thurston*'s recognition that Congress intended liquidated damages to be "punitive in nature," *Dreyer v. Arco Chemical Co.*, 801 F.2d 651 (3d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), turned to the *Restatement (Second) of Torts* § 908 (1979) and adopted "outrageousness" as an appropriate prerequisite for willfulness and liquidated damages. 801 F.2d at 657–58. It concluded that when an individual employee brings a disparate treatment case, "there must be some additional evidence of outrageous conduct" to show willfulness. *Id.* at 658.

Although *Dreyer* avoids the difficulties inherent in the *Lindsey* approach, we believe it goes too far. The term "willful" has been consistently slippery of definition, *see Wehr v. Burroughs Corp.*, 619 F.2d 276, 279–83 (3d Cir.1980), but courts have not included "outrageous" as part of its meaning. *See Thurston*, 469 U.S. at 126–27, 105 S.Ct. at 624–625 ("willful" if actor shows disregard or indifference to statutory requirements); *United States v. Illinois Central Railroad Co.*, 303 U.S. 239, 242–43, 58 S.Ct. 533, 534–35, 82 L.Ed. 773 (1938) (in statutes denouncing acts not wrong in themselves, "willful" encompasses conduct that is intentional, knowing, voluntary or marked by "careless disregard whether or not one has the right so to act"). In *Thurston*, the Court expressly rejected an interpretation of "willful" that would require "evil motive or bad purpose." 469 U.S. at 126 & n. 19, 105 S.Ct. at 624 & n. 19.[4] *Dreyer* likewise purports to avoid such an interpretation, but it relies on a source, the *Restatement (Second) of Torts*, which defines "outrageousness" in part in terms of "evil motive."[5] Because the term "outrageous" is not self-defining

and because the Restatement's definition includes an element of "evil motive," we do not believe that it can be grafted onto the ADEA's conception of willfulness consistently with *Thurston*.

Recent cases in the Fourth and Eighth Circuits appear to seek a definition of willfulness in disparate treatment cases requiring somewhat more fault than *Lindsey* but less than *Dreyer*. In upholding a jury verdict finding an ADEA violation but also upholding the district court's grant of judgment n.o.v. rejecting that jury's willfulness finding, *Gilliam v. Armtex, Inc.*, 820 F.2d 1387 (4th Cir.1987), declared that an employer's awareness of the statutory prohibition when it takes an adverse employment action because of age is not enough to constitute a willful violation. The jury finding of an ADEA violation "does not obviate consideration of the defendant's business justification defense." *Id.* at 1390. The *Gilliam* court itself appeared to weigh the evidence, declaring that plaintiff's high salary indisputably made his employment a losing proposition for the employer, that "the economics of the situation demanded that plaintiff be terminated or accept a drastic reduction in his compensation," *id.,* and that in such circumstances there was no basis to warrant the jury's finding of willfulness. "It was a thin case to begin with, too thin to support the finding of a willful violation of the statute." *Id.* at 1390–91. The Eighth Circuit, too, has found "as a matter of law" that mere violation of the ADEA in what was a disparate treatment case does not establish willfulness, *see Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 359 (8th Cir.1987). It overturned a jury finding of willfulness, while upholding its finding of an ADEA violation. But it did not articulate any precise test, other than to say that the evidence "does not establish more than a

---

**4.** The *Thurston* Court also expressly rejected a requirement that plaintiff need only show that the employer knew that the ADEA was "in the picture." 469 U.S. at 127–28 & n. 22, 105 S.Ct. at 624–25 & n. 22.

**5.** "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's *evil motive* or his reckless indifference to the rights of others. . . ." *Restatement (Second) of Torts* § 908(2) (1979) (emphasis added). *See also id,* comment b.

violation of the ADEA." *Id.* at 359.[6]

■ Like the Fourth and Eighth Circuits, we believe that *Thurston* did not intend that every employer tagged with an ADEA violation, even in a disparate treatment case, must be penalized for a willful violation. But the line separating willful from nonwillful violations defies easy demarcation. The *Gilliam* court thought willfulness was negated because the adverse employment action was motivated in large part by the employer's economic imperative to cut costs. The *Bethea* court's reasoning is less clear but also seems to accord weight to the employer's need to make changes "in a time of depressed market conditions and increased competition." 827 F.2d at 356. While neither of these approaches is pellucid, we believe that each is attempting to distinguish between a finding that age was merely "a determinative factor" in the employer's decision to take an adverse employment action, and a finding that age considerations played a still larger role in the employer's motivations. *Bethea* articulates the need for this distinction in its statement that willfulness requires "some additional evidence" beyond that needed to establish an initial violation under the Act, 827 F.2d at 359; *Gilliam* points out that "there must be something more than a retrospective finding by a jury that there was a simple violation of the statute." 820 F.2d at 1390.

Although no articulation of the distinction may ultimately be perfect, we believe the best is one which builds upon the widely accepted "determinative factor" standard for a finding of liability. Under the standard we adopt today, a basic finding of liability under the Act requires that age be at least one of possibly several "determinative factors" in the employer's conduct; for a willful violation to exist in a disparate treatment claim, a factfinder must find that age was the *predominant* factor in the employer's decision.

We believe this test has advantages over both the Eleventh Circuit's view in *Lindsey* and the Third Circuit's "outrageousness" test in *Dreyer*. To require that age discrimination be the "predominant factor" for a willful violation preserves the congressional intent to retain a two-tiered liability scheme, *see Thurston*, 469 U.S. at 128, 105 S.Ct. at 625, whereas *Lindsey* has the practical result of permitting a willful violation whenever liability is found in a disparate treatment case. The "predominant factor" test avoids the focus on the employer's "evil motive" implicit in *Dreyer*, which we believe is inconsistent with the command of *Thurston*. 469 U.S. at 126 & n. 19, 105 S.Ct. at 624 & n. 19. Finally, the "predominant factor" test speaks to the concerns raised in *Gilliam* and *Bethea* while providing an articulable standard for factfinders to use in evaluating willfulness claims.

■ The jury instruction given by the district court obviously did not refer to the "predominant factor" requirement which we articulate today.[7] Although Asplundh does not attack the court's instruction in its appeal, it does challenge the standard the

---

**6.** In one case our own circuit has affirmed both a jury's finding of an ADEA violation in a disparate treatment case and the judge's finding of nonwillfulness. *Smith v. Consolidated Water Co.,* 787 F.2d 1441, 1442–43 (10th Cir.1986). The parties there had stipulated that the jury would make findings only as to liability, while the judge alone would determine willfulness. In *Smith* we merely ruled that sufficient evidence supported the jury's verdict and that the judge's ruling was not clearly erroneous. We did not there identify any standards or criteria by which to evaluate the correctness of the judge's finding on willfulness. *See also McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 117 & n. 8 (7th Cir.1986) (district judge's findings in bench trial that a violation occurred but that it was not willful not clearly erroneous), *cert. de-*

nied, — U.S. —, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

**7.** This instruction read:
"If you find for plaintiff and award him actual damages for his claim of age discrimination you must also decide if the defendant's violation of the Age Discrimination in Employment Act was willful. A willful violation occurs if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Age Discrimination in Employment Act. A violation is not willful if the employer acts reasonably and in good faith."
Brief of Appellee at 14–15.

jury and the district court applied. We think that is sufficient to justify reversal for a reconsideration of the willfulness issue if the record reasonably supports that approach. Here the record strongly suggests that Asplundh supervisors deliberately set out to find a basis to discharge Cooper. Their motive was the real issue in the case. We have held that the record supports the jury's determination that age was "a" determinative factor. But there is such significant evidence of other possible motives that we cannot confidently say the jury would have found age was the "predominant" determinative factor in Cooper's discharge. We therefore remand to consider the issue of willfulness under the proper standard.

## III

### A

■ Asplundh contends that the district court improperly allowed testimony by Gerald Lopez, who was not listed as a prospective witness in the court's pretrial order. *See* Fed.R.Civ.P. 16(e) (the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order"). Asplundh, however, failed to object on the basis of the pretrial order either when Lopez was called or at any point during his examination. By failing to object, Asplundh waived its right to challenge Lopez' testimony on the basis of the pretrial order. *See Wright Root Beer Company of New Orleans v. Dr. Pepper Co.*, 414 F.2d 887, 892 (5th Cir.1969); *Kozar v. Chesapeake and Ohio Ry.*, 320 F.Supp. 335, 375 (W.D.Mich.1970), *modified on other grounds*, 449 F.2d 1238 (6th Cir.1971).

### B

■ Asplundh asserts that the district court admitted without a proper foundation Lopez's testimony concerning Kershman's reputation for truthfulness. Federal Rule of Evidence 608(a) allows opinion or reputation testimony to attack or support the

credibility of a witness, so long as the evidence refers "only to the character for truthfulness or untruthfulness." To establish a foundation for such testimony, the witness must show "such acquaintance with the [person under attack], the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded." *Michelson v. United States*, 335 U.S. 469, 478, 69 S.Ct. 213, 219, 93 L.Ed. 168 (1948). The reputation testified to must be the reputation at the time of trial, *United States v. Lewis*, 482 F.2d 632, 640 n. 44 (D.C.Cir.1973); the relevant community which holds a reputation of the person may include his business community, *United States v. Mandel*, 591 F.2d 1347, 1370 (4th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *United States v. Salazar*, 425 F.2d 1284, 1286 (9th Cir.1970).

In the instant case, Lopez had been a member of the relevant community—Asplundh employees—for eleven years, where he remained employed at the time of trial. Lopez had dealt regularly with Kershman and other Asplundh employees for almost two years, from the time Kershman became general foreman in July 1983 until the time of trial in June 1985. This long-term daily contact between Lopez and both Kershman and the other Asplundh employees, which Lopez had described before being asked about Kershman's reputation, provides adequate foundation to permit Lopez to testify concerning Kershman's reputation for veracity. *Cf. Salazar*, 425 F.2d at 1286 (knowledge of defendant for only two months of occasional business dealings inadequate). The district court did not abuse its discretion in allowing this testimony.

### C

Asplundh challenges Cooper's counsel's reading from an affidavit of Puterbaugh during closing argument when the affidavit had not been admitted into evidence.[8] The

---

**8.** Because the district court had reserved ruling on the admission of all exhibits until after closing arguments, neither party's counsel knew whether the court would admit the exhibit. Some confusion exists because there apparently were two exhibits "No. 11", one of which was

objection appears to be directed to counsel's statement implying that the derogatory comments about Cooper were made in 1984 rather than in 1982. We have reviewed the entire record and are satisfied that the true dates were adequately before the jury, and that any error arising by inference from the reference was harmless.

### IV

■ In challenging the district court's award of front pay, Asplundh in effect asks us to do what this panel may not, that is, to overrule one of our cases. *EEOC v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985), squarely held that the ADEA permits front pay awards. All of the other circuits that have decided the issue have ruled similarly. *See McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986) (noting agreement of First, Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits).

■ Asplundh argues, alternatively, that the record does not support the award of front pay, and that Cooper's rejection of an arbitrator's order of reinstatement to the position of tree trimmer precludes front pay. In *Prudential*, we approved front pay as a remedy, but noted that because the preferred remedy is reinstatement, the trial court must state why front pay is more appropriate than reinstatement. 763 F.2d at 1173. Reinstatement may be inappropriate "when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Id.* at 1172. Here, the trial court stated its reasons for awarding front pay rather than reinstatement. It noted that "based upon the testimony presented at trial and the briefs submitted, we believe the tension between the plaintiff and the defendant precludes reinstatement as a reasonable remedy." I R. Tab 15, at 2. The record

supports the finding of tension and animosity between the parties in a working environment in which there were relatively few employees and close contact with supervisors. We will not reverse the trial court's finding on this issue.

■ We also conclude that the arbitrator's award should not foreclose Cooper's ADEA claim. The Supreme Court has ruled that a court must not give a prior arbitration preclusive effect in a Title VII suit, *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 59–60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974); a FLSA claim, *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981); or a § 1983 claim, *McDonald v. City of West Branch*, 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984). Because Congress closely modeled the ADEA upon Title VII, we similarly deny preclusive effect to arbitral fact-finding in ADEA claims. *Accord Johnson v. University of Wisconsin–Milwaukee*, 783 F.2d 59, 62 (7th Cir.1986); *Air Line Pilots Association, International v. Trans World Airlines, Inc.*, 713 F.2d 940, 955 n. 17 (2d Cir.1983), *modified on other grounds sub nom. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 548 (9th Cir.1983), *aff'd on other grounds*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985).

Cooper's refusal of the reinstatement opportunity likewise should not affect the award of front pay. First, the "reinstatement" the arbitrator offered was not to Cooper's former position but to the lower position of tree trimmer. Reinstatement under the ADEA must be to the employee's former position or one reasonably equivalent. *See Houghton v. McDonnell Douglas Corp.*, 553 F.2d 561, 565 (8th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed. 2d 451 (1977). Therefore, the opportunity was not equivalent to reinstatement under the ADEA. Second, the reason Cooper re-

not offered into evidence. Counsel's reading may have been from plaintiff's No. 11 which was not offered into evidence; but the language

also appears in defendant's No. 11, which was admitted.

fused the arbitrator's award of reinstatement may well have been the animosity between him and Asplundh that persuaded the district court to award front pay. The district court found that this animosity precluded reinstatement; that Cooper felt similarly should not be grounds for denying him relief.

## V

### A

Asplundh argues that the district court should have reduced the $32,000 amount of the judgment for back pay, which it entered on June 12, 1985, by the arbitral award of $8,264 back pay,[9] entered on June 26, 1985, and should have correspondingly reduced the amount of liquidated damages which the court ordered on August 8, 1985. Asplundh argues that allowing Cooper's award in full would result in an impermissible double recovery. On the facts of this case, we agree that Cooper may not recover both.

Although the Supreme Court held in *Alexander* that an arbitral ruling does not preclude an employee's Title VII rights, 415 U.S. at 52, 94 S.Ct. at 1021, the Court carefully noted that this result should not allow a plaintiff a double recovery. It stated:

"Nor can it be maintained that election of remedies is required by the possibility of unjust enrichment through duplicative recoveries. Where, as here, the employer has prevailed at arbitration, there, of course, can be no duplicative recovery. But even in cases where the employee has first prevailed, judicial relief can be structured to avoid such windfall gains. *See, e.g., Oubichon v. North American Rockwell Corp.*, [482 F.2d 569 (9th Cir. 1973)]; *Bowe v. Colgate–Palmolive Co.*, [416 F.2d 711 (7th Cir.1969)]. Furthermore, if the relief obtained by the employee at arbitration were fully equivalent to that obtainable under Title VII,

there would be no further relief for the court to grant and hence no need for the employee to institute suit."

*Alexander*, 415 U.S. at 51 n. 14, 94 S.Ct. at 1021 n. 14. In *Oubichon*, cited with approval in the *Alexander* footnote, the court noted that when a Title VII grievant accepted a prior arbitration award or settlement, such payments "constitute a *pro tanto* satisfaction of his damage claim." 482 F.2d at 574. *See also Strozier v. General Motors Corp.*, 635 F.2d 424, 426 (5th Cir. Unit B 1981) (if employee receives through arbitration full equivalent of Title VII or § 1981 claim, no basis remains for relief under statute); *cf. Pearson v. Western Electric Co.*, 542 F.2d 1150, 1152–53 (10th Cir.1976) (employee who received prior arbitration award has burden in Title VII suit to show arbitration award was not intended as complete settlement). Although the cited cases involved Title VII claims, the same rule should apply in ADEA cases to prevent a double recovery. The statutes are similar both in their aims and in their substantive prohibitions. *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978).

Cooper attempts to distinguish *Alexander* on the ground that it refers to cases in which the employee had *first* prevailed at arbitration, whereas here the arbitrator announced his ruling two weeks *after* the district court entered its judgment. This argument is not persuasive. In this case, the district court had not yet ruled on Asplundh's motions for judgment n.o.v. or for a new trial when the arbitrator rendered the back pay award. These motions mentioned the pendency of the arbitral award, and the court indicated its awareness of the arbitral award before it ruled on the posttrial motions. In these circumstances, we will construe Asplundh's motions to include a request to alter or amend the judgment under Fed.R.Civ.P. 59(e). *See Morgan Guaranty Trust Company of New York v. Third National Bank of Hampden Coun-*

9. The arbitrator awarded $10,672, but reduced that amount by $2,408, the amount of Colorado unemployment compensation Cooper had received. Since we assume that Colorado would not require repayment of such compensation

which it paid and which the arbitral award did not duplicate, *see infra*, Part V B, we value the arbitral award at $8,264 in determining proper offset.

*ty*, 545 F.2d 758, 760 (1st Cir.1976). At the time the issue of the arbitral award was raised, the district court retained the power to offset the arbitral award in order to avoid double recovery by Cooper. It was error for the court not to make the offset.

Although we have reversed the liquidated damages award, because it may be reinstated on remand we here discuss the issue whether the offset should be applied also to reduce the liquidated damages award if one is made. We are aware of cases holding that offsets of interim earnings, severance pay, pension benefits, and the like must be taken against back pay *before* the award is doubled as liquidated damages. *See Fariss v. Lynchburg Foundry*, 769 F.2d 958, 967 (4th Cir.1985) (pension); *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 80 (2d Cir.1983) (pension) (affirming without discussion of the issue district court's computation of liquidated damages in this manner); *Rodriguez v. Taylor*, 569 F.2d 1231, 1236 n. 9 (3d Cir.1977) (interim earnings), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). *But see EEOC v. United Air Lines, Inc.*, 575 F.Supp. 309, 311–12 (N.D.Ill.1983) (offsetting pension benefits against back pay but not against liquidated damages), *reversed on other grounds*, 755 F.2d 94 (7th Cir. 1985). We do not disagree with these decisions. Nevertheless, we think that an offset of an arbitrator's award, at least one entered after judgment, should be treated differently. An arbitral award of back pay is a quasi-judicial remedy given as compensation for a matured claim; it is therefore different from severance pay, interim earnings and pension benefits, all of which reduce the amount of back pay owed under the ADEA at the time the claim is brought. To offset an arbitral award of back pay against ADEA liquidated damages would discourage use of arbitration. It would also be tantamount to allowing the arbitral award to preclude part of the liquidated damages claim, in violation of *Alexander* and its progeny. *See Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 744–45, 101 S.Ct. 1437, 1446–47, 67 L.Ed.2d 641 (1981) (in support of its decision to deny preclusive effect to arbitral awards in FLSA actions, Court points to fact that arbitrators generally are not authorized to award liquidated damages available under the FLSA). We think that in this case to permit Cooper to take both awards would give him an unjust windfall at the employer's expense. But to apply the offset to reduce both back pay and liquidated damages in a judgment already attained would provide a windfall to the employer the ADEA does not contemplate. Thus the $8,264 should be subtracted only once from the overall award to Cooper.

**B**

While we conclude that the district court erred in not offsetting the arbitrator's award of back pay, we find no error in the court's refusal to offset Cooper's unemployment compensation. The decision whether to offset unemployment compensation is within the trial court's discretion. *EEOC v. Sandia Corp.*, 639 F.2d 600, 624–26 (10th Cir.1980). Unemployment compensation is a collateral source which traditionally is not deducted from a damage award. *Id.* at 624–25. An offset is particularly inappropriate in this case because, under Colorado law, an employee who receives a back pay award must repay the Colorado Division of Employment and Training all unemployment benefit payments received for the period covered by the back pay award. Colo.Rev.Stat. § 8–73–110(2) (1986); *see Pedreyra v. Cornell Prescription Pharmacies, Inc.*, 465 F.Supp. 936, 951 (D.Colo.1979).

**VI**

Asplundh also challenges the trial court's award of attorney's fees of $11,305 to Jeffrey Menter and $950 to Wilhemena Mitchell on the ground that the district court did not adequately justify its award of fees.

In his motion for attorney's fees, attorney Menter submitted reasonably detailed accounts of the hours which he and Mitchell spent on various aspects of the case. In approving this motion in all respects except

a requested bonus, the district court made the following ruling:

"We carefully reviewed the fee affidavits of plaintiff's counsel, Jeffrey Menter and Wilhemena Mitchell. We find the fees to be reasonable. Plaintiff's counsel also requested a fifty percent bonus based upon the complexity of the case and the excellent results achieved. We are not persuaded the bonus is merited. We agree with the defendant's comments pointing out the plaintiff did not prevail on all claims in this litigation. *See, e.g., Ramos v. Lamm,* 713 F.2d 546 (10th Cir. [1983] 1985). For this reason, we deny the requested bonus."

II R. Tab 15, at 2–3.

We grant that this finding falls short of a desirable explication of a district court's decision on a motion for fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("It remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award."). But we can see why the district court's discussion was meager in the case before us. Asplundh did not challenge in the district court the reasonableness of the time records submitted or any aspect of the fee request. Asplundh's only motion which challenged the district court's award pointed out a calculation error, which the court then corrected. Because the objection to the district court's finding was not presented to that court, and the court was not given an opportunity to correct its alleged error, we will not consider the issue on appeal.

## VII

■ Cooper raises a single issue in his cross-appeal—whether the district court erred by refusing to double Cooper's front pay award in computing liquidated damages. We affirm the district court's denial.

Section 7(b) of the ADEA sets forth two types of relief available to an ADEA plaintiff. The section provides in relevant part:

"The provisions of this chapter shall be enforced in accordance with ... section[ ] ... 216 ... of this title.... Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of section[ ] 216.... *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."

29 U.S.C. § 626(b). Section 16, from the Fair Labor Standards Act (FLSA), provides in relevant part:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

29 U.S.C. § 216(b).

Parsing the statutory language of § 626(b) reveals that it provides two types of relief. First is *"amounts owing"* as unpaid wages or unpaid overtime compensation. Section 216(b) instructs that the items to be doubled as liquidated damages are unpaid wages or unpaid overtime compensation. Thus for a monetary award to qualify for doubling as liquidated damages it must be an "amount owing" under § 626(b).

The second type of relief permitted, including front pay, is not found in the "amounts owing" provision of § 626(b), but in the following sentence: "[T]he court shall have jurisdiction to grant such *legal or equitable* relief as may be appropriate...." 29 U.S.C. § 626(b) (emphasis added). We have said this sentence "makes a significant addition to the FLSA remedies" referred to by the "amounts owing" language, *EEOC v. Prudential Federal Sav-*

*ings & Loan Ass'n,* 763 F.2d 1166, 1171 (10th Cir.1985). Because the authority to grant front pay as a remedy stems not from the "amounts owing" language but from the additional power to grant appropriate legal and equitable relief, we conclude that the statute does not contemplate the doubling of front pay awards as liquidated damages in cases of willful violations. The only other decisions we have found have so held. *See Dominic v. Consolidated Edison Co. of New York,* 822 F.2d 1249, 1258–59 (2d Cir.1987); *Bhaya v. Westinghouse Electric Corp.,* 624 F.Supp. 921, 924 (E.D.Pa.1985), *vacated on other grounds,* No. 84–5381 (E.D.Pa. Dec. 30, 1986) [Available on WESTLAW, 1986 WL 15013], *reinstated and remanded,* 832 F.2d 258 (3d Cir.1987).

### VIII

Cooper seeks attorney's fees for the costs of this appeal. Appellate attorney's fees may be awarded under 29 U.S.C. § 216(b) when the appellate court determines in its discretion that they are appropriate. *O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 748 F.2d 1543, 1553 (11th Cir.1984); *Cleverly v. Western Electric Co.,* 594 F.2d 638, 643 (8th Cir.1979); *Montalvo v. Tower Life Building,* 426 F.2d 1135, 1150 (5th Cir.1970). Cooper has prevailed only on some of the issues raised in Asplundh's appeal. It has not prevailed on its cross-appeal. On balance we believe no award of attorneys' fees for the appeal is appropriate in this case. We therefore deny the request for attorneys' fees.

In conclusion, we AFFIRM except with respect to the issues of liquidated damages and the arbitral award setoff. As to the award of liquidated damages, we REVERSE and REMAND for a new trial. As to arbitral award setoff, we REVERSE and REMAND to the district court to offset the arbitral award in the amount of $8,264 from the district court's judgment. We hold that Cooper is the prevailing party for purposes of recovering costs, except for its filing fee on the cross-appeal.