Luther Kevin **CUNNINGHAM**, Plaintiff,

v.

**SUBARU OF AMERICA, INC.,** et al., **Defendants.**

Civ. A. No. 85–2621–S.

United States District Court, D. Kansas.

April 13, 1988.

Gary C. Robb, Anita Porte Robb, Robb & Robb, Kansas City, Mo., Gerald T. Elliott, Gerald T. Elliott Law Firm, Overland Park, Kan., for plaintiffs.

Thomas O. Baker, Mary Michael Kelly, McAnany, Van Cleave & Phillips, Kansas City, Mo., for Subaru of America.

Thomas N. Sterch, James T. Seigfreid, Baker & Sterchi, John J. Jurcyk, Jeanne Gorman Rau, Kansas City, Mo., for Fuji Jukogyo Kabushiki Kaisha.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This product liability action was tried to a jury in September and October, 1987, resulting in a plaintiff's verdict for $467,-710 in actual damages (reduced to $374,168 based on plaintiff's comparative fault of 20%) and $1.5 million in punitive damages. The allegedly defective product was a 1979 Subaru "Brat," a vehicle resembling a small pick-up that included two rearward-facing seats in the bed. The jury found

defendant Fuji Heavy Industries Ltd., the manufacturer of the vehicle, to be 50% at fault and liable for $1 million in punitive damages, and defendant Subaru of America, Inc., the importer and distributor, to be 30% at fault and liable for $500,000 in punitive damages. The court has before it defendants' motion for judgment notwithstanding the verdict or for remittitur or for a new trial.

 This court is particularly conscious of a litigant's interest in retaining the verdict of a jury. "[S]ince the grant of [a motion for judgment notwithstanding the verdict] deprives the nonmoving party of a determination of the facts by a jury, [it] should be cautiously and sparingly granted." *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 680 (10th Cir.1981). In reviewing a motion for judgment notwithstanding the verdict, the court must not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* at 680 n. 2. Overturning a jury's verdict is permissible only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made. *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988). While a scintilla of evidence is not enough, the district court must deny the motion if evidence was before the jury upon which it could properly find against the movant. *Id.* Finally, in reviewing a motion for judgment notwithstanding the verdict, the court must construe the evidence and inferences most favorable to the non-moving party. *Bruno v. Western Elec. Co.,* 829 F.2d 957, 962 (10th Cir.1987) (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1171 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985)). The court will be ever mindful of these principles in reviewing the merits of defendants' motion for judgment notwithstanding the verdict.

 Rule 59(a) of the Federal Rules of Civil Procedure permits the trial court to grant a new trial "to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." *See Suggs v. State Farm Fire and Casualty Co.,* 833 F.2d 883, 887 n. 5 (10th Cir.1987) (federal law provides the substantive standard for reviewing the grant or denial of a new trial in a diversity case). Whether to grant a new trial is a decision committed to the informed discretion of the district court. *Ryder v. City of Topeka, Kan.,* 814 F.2d 1412, 1424 (10th Cir.1987). *See also McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). In reviewing a motion for new trial, the district court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equip.,* 464 U.S. at 553, 104 S.Ct. at 848. "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983). The district court's grant or denial of a motion for new trial made on the ground that the verdict is against the weight of the evidence is affirmable on appeal absent an "unusual situation" or a "gross abuse of discretion." *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1456 (10th Cir.1987) (citing *Harris v. Quinones,* 507 F.2d 533, 535 (10th Cir.1974)). "A motion for new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the court." *Black v. Hieb's Enter., Inc.,* 805 F.2d 360, 363 (10th Cir.1986). The trial court must focus on whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. *Id.*

## I. FACTS

 Turning first to defendants' motion for judgment notwithstanding the verdict, they have stated eight separate grounds in

support. First, defendants argue the evidence did not establish a duty by defendants to warn plaintiff about the condition of the rear seats of the Brat, because the plaintiff had actual knowledge of the alleged defective condition. At trial, plaintiff testified that he did not like to ride in the bed of a truck but chose to ride in the bed of the Subaru Brat because the bed contained seats for that purpose. Transcript of Plaintiff's Testimony, at 34. Plaintiff also testified that he had not previously encountered problems with the rear seats. *Id.* at 32. Furthermore, although plaintiff testified that he appreciated the risk of riding in the bed of a pickup in the course of "four-wheeling," *id.* at 49–50, the thrust of his testimony was that he did not believe he could be seriously injured through the normal operation of the vehicle. The court finds that the testimony sufficiently established plaintiff's ignorance of the risks involved in riding in the rearward seats.

Second, defendants argue plaintiff failed to prove that his injuries were caused by the allegedly defective condition of the rear seats of the Brat. Both plaintiff and his treating physician, Dr. William Reed, testified in support of the seat having caused plaintiff's injury. This testimony was sufficient to prevent this court from finding that the evidence points but one way.

Defendants' third argument is brief:

[P]laintiff's expert, James McElhaney, indicated that in order for the plaintiff to have been injured as he claims, [plaintiff] must have bounced off the rear seat of the Brat at least one and one-half (1½) feet. According to plaintiff's own testimony, he never rose more than one foot off the rear seat. Thus, there is no foundation for plaintiff's expert's opinion that the alleged condition of the rear seats caused or contributed to plaintiff's alleged injuries.

The court believes that defendants' argument goes more toward the weight and credibility of McElhaney's testimony than its foundation. McElhaney simply testified that if certain forces actually occurred, a possible result could have been the injury suffered by plaintiff.

■ Defendants' fourth argument is that plaintiff failed to establish that the rear seats of the Brat were unreasonably dangerous. The court finds that sufficient evidence was adduced at trial to avoid a potential directed verdict on this issue. After hearing testimony about the forces that can act on a person who is riding in the rear of a pickup while traversing rough terrain, the court believes that there was at least more than a scintilla of evidence to establish that an expected user of the product might find the rearward-facing seats unreasonably dangerous, even considering the presence of seat belts.

■ Fifth, defendants argue that plaintiff failed to produce facts establishing any liability on the part of the seller, Subaru of America, Inc. Defendants list K.S.A. 60–3306 as setting forth the elements of exempting a seller from liability. One of the elements includes the requirement that the seller could not reasonably have discovered the alleged defect while performing actual or required duties. As plaintiff points out in his brief in opposition to defendants' motion, there was testimony that an importer and distributor of a vehicle follows a generally accepted principle of independently testing the vehicle. Subaru of America apparently did not perform any of the recommended tests. Even if Subaru of America, Inc. had no actual knowledge of the potential danger involved with the seats, a seller cannot avoid liability by deliberately engaging in an attempt to remain uninformed about a product's attributes or characteristics. A duty to test might be particularly appropriate in the case of the Brat, because this model of vehicle was exported all over the world without rearward-facing seats, and only in the American and Canadian markets were the seats added. There was sufficient evidence on Subaru's duty as an importer to prevent judgment notwithstanding the verdict on this issue.

The sixth argument is that the jury's verdict is inconsistent with and against the weight of the evidence. This argument will be discussed in connection with defendants' motion for new trial. The court does

not believe that under the applicable standards, judgment notwithstanding the verdict is appropriate, especially in light of the rule against "weighing" the evidence.

Defendants' seventh argument concerns the availability of punitive damages under the evidence produced at trial. The court simply disagrees with defendants and finds that sufficient evidence was produced to support such an award.

Defendants' eighth and final argument concerns the statute of limitations. The court has addressed this argument in a previous Memorandum and Order, and that ruling shall stand.

For these reasons, defendants' motion for judgment notwithstanding the verdict should be denied.

■ By the same token, however, although plaintiff produced enough evidence to withstand a motion for directed verdict (and thus judgment notwithstanding the verdict), for the reasons outlined below the court finds that the verdict was against the weight of the evidence. Therefore, a new trial on all issues is appropriate.

The first dubious matter concerned the mechanics of how the injury was produced. Plaintiff testified on direct examination that the vehicle went over a series of bumps on a dirt road at a speed somewhere between 20 and 45 miles per hour,* causing plaintiff to be thrown in an upward direction from the seat a distance of six to ten inches off the seat. He contended that the subsequent downward movement of his body along with the concurrent upward movement of the vehicle, resulting in his being slammed back into the seat, put sufficient pressure on his spine to cause an acute compression loading of the lumbar spine, creating a burst fracture and a partial spinal cord injury. Plaintiff also testified that while he was being thrown up and down in the rear of the vehicle, other articles such as lawn chairs and beverage coolers were being thrown around, all "like a rag doll."

The only other witnesses to the alleged incident, Kevin Jones and Rebecca Stack, were riding in the cab of the Subaru Brat. Their testimony is consistent and diametrically opposed to plaintiff's. Kevin Jones testified that he went over the bumps at a speed of 15–20 miles per hour, that he was not even bounced in his seat let alone thrown in the air, and that he had a view of plaintiff through the rear view mirror and observed that plaintiff was not bounced around. He also testified that he neither saw nor heard the other articles in the back bouncing or rattling around. In all respects, Kevin Jones' testimony fails to establish anything but an extraordinarily calm and uneventful ride.

Rebecca Stack testified that at no time was the vehicle going faster than 20–25 miles per hour. She also testified that the only manner in which she sensed going over the series of bumps was through a slight rocking of the seat cushion. To plaintiff's credit, both witnesses testified that plaintiff began complaining of back pain after going over the bumps, but this fact does not offset the serious differences between plaintiff's and the other witnesses' versions of the incident. On top of this, plaintiff's own expert testified that in order to produce the force required to sustain an injury of the magnitude of plaintiff's, plaintiff would have had to have been separated from the seat a minimum of one and one-half feet, nearly twice as high a distance as plaintiff's testimony established.

Viewing the occurrence testimony as a whole, the court must find that the jury disregarded the weight of the evidence in concluding that plaintiff's back could have been broken by riding in the Brat while traversing those series of little bumps.

The jury also disregarded overwhelming evidence that, to a reasonable degree of medical certainty, plaintiff's injury must have occurred prior to July 16, 1983. On one side, plaintiff testified that his back was broken on that date, and the treating physician, Dr. William Reed, testified that,

---

* On cross-examination, defense counsel brought out that plaintiff had previously testified to a speed of 40–45 miles per hour.

on the basis of a CT scan (taken on a machine that was admittedly inferior to those presently in use), the lack of white material meant that the fractured bone had not yet begun to heal. This testimony supported the occurrence of the injury within a relatively short period prior to the CT scan, which incidentally was taken two days after the date of the alleged accident. Dr. Reed had finished his medical training barely a week before the alleged accident, and was not specialized in areas such as radiology and pathology. This should be given consideration in reviewing the evidence as a whole.

The treating pathologist, Dr. Wayne DeMott, testified that a bone sample taken from plaintiff during surgery only ten days after the alleged incident exhibited bone growth that would date the injury a minimum of six weeks hence, well before July 16. Dr. DeMott had been a pathologist at Providence–St. Margaret's Hospital in Kansas City, Kansas since 1968.

A medical expert originally retained by defendants but called by plaintiff, Dr. Andrew Rhodes, also testified on this subject. Dr. Rhodes' specialty was neurosurgery, and he had been a practicing physician since 1972. Dr. Rhodes testified that the healing process in the plaintiff's wound had progressed at least three weeks at the time of the CT scan on July 18, again indicating the injury occurred well before July 16. He testified that to a reasonable degree of medical probability, plaintiff's injury was three weeks old on July 18, 1983.

Finally, a Dr. Thomas Phillips, who was also originally retained by defendants but called by plaintiff, gave testimony on this subject. Dr. Phillips specializes in orthopedic surgery at St. Luke's Hospital in Kansas City, Missouri, and had been in practice since 1978. His testimony was as follows: (1) He believed that, based on the CT scan, plaintiff's injury had to have occurred more than 48 hours prior to July 18; and (2) Based on the CT scan, the pathologist's report, and his own medical training and experience, he opined that to a reasonable degree of medical probability, plaintiff's injury occurred prior to July 16, 1983.

A significant component of the court's scepticism concerning the actual date of plaintiff's injury is his testimony that for several weeks prior to July 16, he had been experiencing such back pain that he would ask various persons to walk on his back in order "to get it to pop." Transcript of Plaintiff's Testimony, at 137–38. Plaintiff's back pain was apparently brought on by his job as a steelworker, in which he had to handle and move large manhole covers and 55–gallon drums full of steel parts, a significant physical task considering that the plaintiff is a man of slight build.

In summary, the court believes that the verdict in favor of plaintiff on the liability issue, in particular the element of causation, is decidedly against the weight of the evidence. Defendants moved for judgment notwithstanding the verdict on this ground, and the court previously found that the standards for directing the verdict had not been met. However, the standard for granting a new trial based on the weight of the evidence has been met, and the court finds that this is the proper disposition of defendants' motion. The court does not believe that the remaining allegations of error by defendants are meritorious.

The court wishes to make one final comment in this matter. This judge cannot remember a prior instance during eight years on the bench in which a new trial has been granted in this court based on the weight of the evidence. The court has the utmost respect for the sanctity of a jury verdict, and more than once has gone to the outermost limit in upholding an award. Absent the most egregious of circumstances, the court would not engage in second-guessing the wisdom or collective judgment of a jury panel. However, those circumstances have finally been brought before this court. This has been an extremely difficult and trying decision, arrived at only after a careful and complete reading of all relevant trial transcripts. But it is a decision the court is compelled to make under the prevailing legal standards. The court empathizes with the plaintiff, but it is bound by stare decisis in concluding that

the jury verdict was against the weight of the evidence.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for a new trial be granted. IT IS FURTHER ORDERED that defendants' motions for remittitur or judgment notwithstanding the verdict be denied.