**Sharon CONE, Plaintiff,**

v.

**LONGMONT UNITED HOSPITAL ASSOCIATION, Defendant.**

**Civ. A. No. 90–B–1831.**

United States District Court, D. Colorado.

Sept. 3, 1992.

Darold W. Killmer, Lynn D. Feiger, Feiger, Collison & Killmer, Denver, Colo., for plaintiff.

Brett Marshall Godfrey, Gallo & Godfrey, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

Defendant moves for summary judgment, contending that as a matter of law plaintiff was not "discharged" within the meaning of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* The issue is adequately briefed and oral argument will not materially aid its resolution. Because plaintiff voluntarily took a leave of absence knowing that her position would be filled, she was not discharged within the meaning of ADEA when defendant terminated her status as an employee after one year on leave. Accordingly, defendant's motion is granted.

The following material facts, gleaned from various depositions, are not genuinely disputed. In the Fall of 1988, plaintiff was director of customer services for defendant and had been an employee there for 22 years. She was 46 years old. In the course of his investigation into a suspected embezzlement of hospital funds by plaintiff's brother in law, on September 18, 1988, plaintiff's supervisor, Dan Palmquist, confronted plaintiff with a promissory note that she had notarized. Plaintiff contends that she was so traumatized by this inquiry that she was medically unfit to continue working. Hence, on September 19, 1988, plaintiff requested a leave of absence until February 6, 1989. She attached a note from her doctor to that request. Rather than personally request this action, plaintiff slipped her request form under Palmquist's door after hours. Despite this unorthodox method of requesting a leave, defendant granted her request.

At that time, Palmquist advised plaintiff that the hospital could not hold her position open and that he would be seeking an immediate replacement for the director of customer services position. In her deposition, plaintiff admits that she was told defendant could not keep her job open and she admits knowing that every day she stayed away increased the risk she would not be able to get her job back. Plaintiff also admits knowing that defendant needed the presence of a customer service director. Two months later, defendant hired a new director of customer services who was in his mid-thirties.

In January, 1989, plaintiff requested an extension of her leave of absence until June 6, 1989. Plaintiff again used the note-under-the-door method, and defendant granted her this extension. In late May or early June, 1989, plaintiff contacted defendant's personnel director, Harry Neveling, and told him that "I wanted my position back, or something substantially similar." Neveling responded that her position had been filled and that there were no substantially similar positions available. In her deposition, plaintiff admits that she twice checked defendant's "job board," on which all openings are posted, and there were no jobs available for her. She further admits that she never applied for any jobs at the hospital during the course of her leave of absence. Additionally, Neveling sent plaintiff two letters in August confirming that there were no substantially similar job openings and offering to help her find employment with other employers.

Defendant's leave of absence policy provides that the maximum duration of any leave is one year. When plaintiff's year was up, Neveling sent her a letter releasing her from employment effective September 19, 1989. Plaintiff subsequently brought suit under ADEA for age discrimination, alleging that defendant discriminated against her on the basis of her age by filling the customer service director position with a younger person. Plaintiff does not contend that defendant discrimi-

nated against her by not reinstating her into a substantially similar position.

■ An employee alleging intentional discrimination under ADEA must prove that age was a "determinative factor" in the defendant employer's action toward her. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988). A plaintiff may attempt to meet this burden by presenting direct or circumstantial proof that age was a determinative factor, or she may rely on the three step, burden shifting process established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ In an age discrimination discharge claim, a plaintiff establishes a prima facie case by showing that: (1) she is within the protected age group; (2) she was doing satisfactory work; (3) she was discharged despite the adequacy of her work; and, (4) her position was filled by a person younger than she. *Cooper*, 836 F.2d at 1547. If plaintiff establishes her prima facie case, the burden of production shifts to defendant to show a legitimate, nondiscriminatory reason for the challenged action. *Id.* The plaintiff retains the ultimate burden of persuasion, which she may carry directly by proving that age was a determinative factor in the employment decision, or indirectly by establishing that the employer's proffered explanation is mere pretext. *Id.*

■ Plaintiff's prima facie case fails here because defendant did not "discharge" her within the meaning of ADEA. 29 U.S.C. § 623(a)(1), ("It shall be unlawful for an employer ... to discharge any individual ... because of such individual's age"). Although the word is not defined, the plain meaning of discharge in the ADEA context must require some affirmative, discriminatory *action* by the employer, such as firing an employee or failing to reinstate an employee into an open position after a leave of absence. By definition, where an employer takes no discriminatory action, it cannot be liable under ADEA.

Here, plaintiff voluntarily and knowingly created the condition that inexorably lead to the administrative termination of her employment status. Plaintiff took a leave of absence knowing that her position would be filled. Plaintiff voluntarily took the risk that no "substantially similar" position would be available when she desired to return to work. Plaintiff does not even allege that such positions were, in fact, available or that defendant manipulated the job board to hide openings from her.

In a technical sense, one could say that defendant did "discharge" plaintiff, but this action did not result from any affirmative decision on defendant's part. Rather, it resulted from plaintiff's decision to leave her job knowing it would be filled and the automatic application of hospital policy to terminate any employee who was not working within one year after taking a leave of absence. Defendant simply had no opportunity throughout these events to make a discriminatory decision or to take discriminatory action against plaintiff. Defendant did not fire plaintiff, nor did defendant have to choose between plaintiff and her younger replacement. To now say that defendant "discharged" her within the meaning of ADEA perverts the purpose of that Act and the plain meaning of the word.

This is not to say, however, that a plaintiff terminated during a leave of absence could never state an ADEA claim. For example, if the customer service director position was still open when plaintiff desired to return, and defendant hired a younger replacement, then plaintiff could have an ADEA claim. However, on the undisputed facts presented here, plaintiff cannot show that she was discharged within the meaning of ADEA and, thus, she has failed to establish her prima facie case.

Accordingly, IT IS ORDERED THAT:

(1) Defendant's motion for summary judgment is GRANTED; and,

(2) Final judgment shall enter in favor of defendant and against plaintiff.