Donald E. HARTIG, Plaintiff,

v.

SAFELITE GLASS CORP., Defendant.

No. 91–1358–PFK.

United States District Court,
D. Kansas.

April 27, 1993.

Darrell L. Warta, J. Steven Massoni, Mary Kathleen Babcock and Jay M. Rector of Foulston & Siefkin, Wichita, KS, for plaintiff.

W. James Foland and Karen R. Glickstein of Shughart, Thomson & Kilroy, P.C., Kansas City, MO and Terry L. Mann of Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

Plaintiff brought claims charging violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA), breach of an implied contract of employment, misrepresentation, breach of a stock option agreement, and breach of the covenant of good faith and fair dealing implied in the stock option agreement. Defendant moved for summary judgment with respect to all claims.

Plaintiff Donald Hartig was employed by defendant Safelite Glass Corporation in December of 1978. There was never an express contract governing his employment.

In 1987, Safelite offered certain employees the opportunity to participate in a stock option plan. Plaintiff entered into a written agreement with defendant to participate in the plan.

In March of 1989, Robert Morosky became defendant's CEO. In April of 1989, plaintiff's job description changed from vice president-finance to vice president-controller, and Stephen Pohlit became Safelite's chief financial officer.

On August 1, 1989, plaintiff was informed of problems in his job performance. There is some dispute whether or not he was actually terminated on this date. In either case, plaintiff continued to work until September 28, 1989. Plaintiff was 47 years of age when he was terminated. Plaintiff was replaced by David Karnofel, age 34.

Plaintiff filed this suit on August 21, 1991.

### Age Discrimination Claim

Plaintiff brought a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA). Either on August 1, 1989 or on September 28, 1989, Mr. Hartig was informed of his termination. He filed his suit on August 21, 1991.

To establish age discrimination, the plaintiff must prove that age was a determining factor in defendant's treatment of him. *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984). Plaintiff need not prove that age was the sole reason for the employer's acts, but he must prove that age was the determinative factor in the employer's decision. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988); *E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Whitten v. Farmland*

*Indus., Inc.,* 759 F.Supp. 1522, 1531 (D.Kan. 1991).

■ In the absence of direct evidence of age discrimination produced by plaintiff, the court must analyze the claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* the plaintiff bears the burden of establishing a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). By establishing this *prima facie* case, the plaintiff creates a presumption of unlawful discrimination that requires the defendant to produce evidence of a nondiscriminatory reason for its actions. *Id.* at 254–55, 101 S.Ct. at 1094–95. The plaintiff then has the burden of showing that the defendant's proffered reasons are merely pretextual. *Id.* at 255–56, 101 S.Ct. at 1094–95.

■ To establish the *prima facie* case, plaintiff must show that: (1) he was within the protected class; (2) he was performing his work satisfactorily and was qualified for the position; (3) he was adversely affected by the defendant's employment decision; and (4) his position was filled by a person outside the protected group.[1] *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1119 (10th Cir.1991); *Branson v. Price River Coal Co.,* 853 F.2d 768, 770 (10th Cir.1988); *Cooper,* 836 F.2d at 1547 (10th Cir.1988). The Tenth Circuit has incorporated a showing of satisfactory work performance into the *prima facie* case requirements. Under the Tenth Circuit's reasoning, the plaintiff may establish this element by producing credible evidence that he continued to possess the objective qualifications he held when he was hired, or by his own testimony that his work was satisfactory even if disputed, or by evidence that he held his position for a significant period of time.

*MacDonald,* 941 F.2d at 1121. Plaintiff need only demonstrate that his performance was of sufficient quality to merit continued employment. *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1421 (10th Cir.1991). The defendant's reasons for discharge are to be discussed at the pretext stage of the analysis.

Defendant has not argued about the sufficiency of plaintiff's *prima facie* showing of age discrimination. Instead, defendant moved for summary judgment arguing that the applicable statute of limitations had run.

Because defendants have moved for summary judgment, the court must be mindful of the standard for granting or denying the motion. A motion for summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence in the record must be viewed in the light most favorable to the nonmoving party. *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). Summary judgment shall be denied if the moving party fails to demonstrate its entitlement beyond a reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980).

■ The party moving for summary judgment is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case with respect to which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). In resisting a motion for summary judgment, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the party must come forward with specific facts showing the presence of a genu-

---

1. Defendants suggest that *Cooper* and *Branson* have different standards for the fourth prong of the test. *Branson* states that the person hired must be outside the protected class, while *Cooper* merely states that the person hired must be younger than plaintiff. *Cooper,* however, dealt with a plaintiff in the protected group, and the person hired was younger and outside the protected group. Thus, while the *Cooper* court may not have been as explicit as the *Branson* court, the standard employed is the same.

ine issue for trial. *Abercrombie v. City of Catoosa, Okla.,* 896 F.2d 1228, 1230 (10th Cir.1990). In conducting its analysis, the court will read the record "in the light most amiable to the nonmovant and indulge all reasonable inferences" favorable to the non-moving party. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way consistent with this purpose. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

The ADEA forbids an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

■ The Portal-to-Portal Pay Act, 29 U.S.C. § 255, supplies the limitations period for actions brought under the ADEA. 29 U.S.C. § 626(e). The Portal-to-Portal Pay Act establishes two different limitations periods. Generally, the suit must be commenced within two years after the cause of action accrued. 29 U.S.C. § 255(a). If the cause of action arose from a "willful violation," however, the cause of action may be commenced within three years after the cause of action accrued. *Id.*

The Civil Rights Act of 1991 amended the applicable statute of limitations under the Portal-to-Portal Pay Act, 29 U.S.C. § 626(e), and there is some question as to whether or not this amended provision now provides the only appropriate statute of limitations. Under this new provision, the ADEA plaintiff must bring suit within 90 days of receiving notice of dismissal of the administrative charge or of termination of administrative proceedings before the EEOC.

This court has held that the Civil Rights Act of 1991 does not apply retroactively. *White v. Union Pacific R.R.,* 805 F.Supp. 883, 889 (D.Kan.1992). The ruling in that case was, however, specifically concerned with § 101 of the Civil Rights Act of 1991 and its ability to modify 42 U.S.C. § 1983.

The question before this court is whether to apply other sections of the Civil Rights Act of 1991 retroactively.

The Supreme Court stated that "retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The circuits tackling this issue have, therefore, tried to imagine the possible congressional intent when no intent was expressly stated. *Banas v. American Airlines,* 969 F.2d 477 (7th Cir.1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. Cincinnati,* 959 F.2d 594 (6th Cir.); *cert. denied,* —— U.S. ——, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992).

One court has held that 29 U.S.C. § 626(e), as amended by the Civil Rights Act of 1991, applies to claims accruing prior to the effective date of the 1991 Civil Rights Act. In *McConnell v. Thomson Newspapers, Inc.,* 802 F.Supp. 1484, 1494–95 (E.D.Tex.1992), the court reasoned that a statute of limitations was a procedural, not substantive, issue, and as such should be applied retroactively.

One circuit dealt generally with the retroactivity of procedural provisions of the Civil Rights Act of 1991. *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992). In dicta the court stated that a trial court's retroactive application of a procedural provision does not raise the same concerns as the retroactive application of provisions defining a party's substantive rights. Because procedural rules regulate trial proceedings, it is not unfair to require parties to comply with the rules of procedure applicable at the time they begin a new trial proceeding. Thus, the court found that "it is arguable that courts should apply the procedural and damage provisions in effect at the time of the trial." *Id.* at 939. The court was aware, however, of the problem in requiring trial courts to distinguish provisions regulating procedure and those affecting substantive rights.[2]

---

**2.** *One circuit, however, held that because some* of the 1991 Act's provisions affect substantive

The Tenth Circuit has held that the statute of limitations in the Portal-to-Portal Pay Act is procedural. *Hodgson v. Humphries,* 454 F.2d 1279, 1283 (10th Cir.1972). The court held that the limitations period was intended as a limitation on the remedy available, not on the right to bring an action. *Id.* at 1284. Finding that the underlying concerns of retroactivity are not evoked in this procedural context, this court can find that the limitations period of the amended § 626(e) applies retroactively.[3]

Under the amended § 626(e), the applicable time period states:

> If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section ... against the respondent named in the charge within 90 days after the date of the receipt of such notice.

The EEOC terminated its proceedings with respect to plaintiff's claim on June 24, 1991, and sent notice to plaintiff on that same date. Plaintiff filed suit on August 21, 1991, well within the 90 days required by the statute. Thus, under this amended statute, plaintiff's age discrimination claim would not be time barred.

But plaintiff's problem arises from the fact that the claim accrued and was filed before the effective date of the 1991 Civil Rights Act. Plaintiff filed suit in August of 1991, three months before the 1991 Act became effective. Assuming that plaintiff's claim was time barred under the old statute, the 1991 Act and its retroactive effect cannot be used to revive dead claims that were filed under the old procedural provisions. The dicta in *Mozee* states that the procedural provision should be applied retroactively so that the court can apply the law at the time of the

trial proceeding. The proceeding at issue with a statute of limitations question is the filing date. On that date, the relevant statute was the old statute under which plaintiff is time barred. To give effect to the new statute retroactively would result in saving an otherwise dead claim and thereby make the statute of limitations into a substantive, rather than procedural, statute. In that case, the statute should be applied prospectively as are all substantive provisions.

Although the procedural provision of the 1991 Civil Rights Act should be applied retroactively, retroactive application should only apply to claims that accrued before the effective date of the 1991 Act but were filed after the Act became effective. Thus, plaintiff's argument that the 1991 Civil Rights Act can save an otherwise time-barred claim is ultimately unpersuasive. Even given retroactive application, the 1991 Act does not apply to a claim filed before the Act became effective, as in this case.

The earlier Portal-to-Portal Pay Act, 29 U.S.C. § 255, must therefore supply the limitations period for actions brought under the ADEA in this case. 29 U.S.C. § 626(e). Thus, the suit must be commenced within two years after the cause of action accrued, or if the cause of action arose from a "willful violation," the cause of action may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a).

The first question before the court is whether or not plaintiff's claim is viable given the two-year statute of limitations found in § 255(a). Plaintiff arguably was notified of his termination on August 1, 1989, but did not file suit until August 21, 1991.

 The "discriminatory event" required by the statute was when plaintiff was notified of his termination. Upon notification of an adverse employment decision, the period for

---

rights, the entire Act should be applied prospectively. *Vogel,* 959 F.2d at 597.

**3.** This court has previously held that the issue of retroactivity should not depend upon which section of the Civil Rights Act of 1991 is at issue. *Eaton v. U.S. Postmaster General,* No. 90–1312–PFK, 1992 WL 363674, LEXIS 18922 (D.Kan. Nov. 24, 1992). In that case, however, the court

was discussing the retroactivity of § 102 of the 1991 Act which covers compensatory damages. Thus, there should be no distinction between sections of the 1991 Act when those sections embrace substantive provisions of the statute. In the present case, the issue concerns a procedural provision. Thus, to find a procedural provision should apply retroactively does not disturb our earlier ruling.

filing a discrimination charge begins. *Delaware State College v. Ricks*, 449 U.S. 250, 256–59, 101 S.Ct. 498, 503–05, 66 L.Ed.2d 431 (1980); *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 614 (10th Cir.1988).

■ Plaintiff raises some question over exactly when his termination was final and unequivocal. Plaintiff submitted deposition testimony that the termination date was August 1, 1989. In his deposition, plaintiff states that defendant terminated him at "the meeting on August 1." (Hartig Depo., p. 67.) Later, plaintiff admits that he thought the meeting of August 1, 1989 was the date of his termination. (Hartig Depo., p. 103.) Furthermore, defendant submitted evidence from Stephen Pohlit, chief financial officer for the corporation, that supports the fact that termination was on August 1, 1989. (Def.'s Ex. G.)

To throw the date of termination into doubt, however, plaintiff has submitted evidence in the form of a letter to the Kansas Human Rights Commission concerning plaintiff's termination. (Lopienski Depo., p. 114; Pltf.'s Ex. 36.) In his complaint to the KCHR, plaintiff states that on August 1, 1989 he was merely told that he was not fitting in. Plaintiff claims that he was not informed of his termination until September 28, 1989. In response to the KCHR, Mr. Lopienski, vice president of human resources at Safelite, states that plaintiff was terminated on September 28, 1989 but told of this impending termination on August 1, 1989.

The factual dispute in this case primarily stems from the two contrary statements made by plaintiff concerning his termination. Although contrary sworn statements should not be disregarded for summary judgment purposes, the Tenth Circuit has held that a court may disregard a contrary affidavit when it concludes that it constitutes an attempt to create a sham fact issue. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986). The court held that summary judgment should be used to screen out sham factual issues that result merely because a party contradicts his own prior testimony. *Id.*

In this case, Mr. Hartig admitted in his deposition that he was terminated on August 1, 1989. He continued by saying that he was free to stay on during August and September to complete some of his projects. Mr. Hartig unequivocally knew, according to his deposition, that he was terminated on August 1, 1989, but was allowed to stay on until the end of September. (Hartig Depo., pp. 103–04.) The deposition was taken on May 12, 1992.

But Mr. Hartig asserted contrary statements when he filed his claim with the KCHR in 1990. At that time, plaintiff claimed that he was terminated September 28, 1989. There is no reason to believe that plaintiff would create a worse factual situation for himself—by later stating August 1, 1989 was the termination date—with the hope of creating a sham factual issue to defeat summary judgment. He could have more easily defeated a summary judgment motion by adhering to his earlier statement of facts. Thus, there appears to have been genuine confusion concerning what plaintiff was told at the August 1, 1989 meeting. This confusion, combined with Mr. Lopienski's statement of a September 28, 1989 termination date, creates a genuine issue of fact.

Thus, for purposes of the summary judgment motion this court finds that the termination date appears to be factually disputed. If August 1, 1989 is the termination date, then the claim is time barred unless the two-year statute is tolled. If there is willfulness on the part of defendant, however, the three-year statute applies. If September 28, 1989 is the termination date, plaintiff's claim is timely under the applicable two-year statute.

■ Plaintiff argues that the violation at issue here is a continuing violation and therefore extends the accrual date for limitations purposes. A continuing violation may be established by either a company-wide policy of discrimination or a series of related acts taken against a single individual. *Bruno v. Western Elec. Co.*, 829 F.2d 957, 961 (10th Cir.1987). The plaintiff must show that the policy was applied or the acts took place during the period, and that what is occurring is not just the continuing effect from an earlier practice. *Waller v. Consolidated Freightways Corp. of Del.*, 767 F.Supp. 1548, 1558 (D.Kan.1991). At oral arguments, plaintiff made some allusion to a company-

wide policy of discrimination, but plaintiff's motion addressed only acts taken against plaintiff. Also, plaintiff has alluded to only scant evidence of a company-wide policy of discrimination. Thus, this court will address the continuing violation theory only as to how it applies to acts taken against plaintiff.

 Plaintiff contends that from April, 1989 until September, 1989 defendant worked to drive plaintiff from his job and deny him benefits under the stock option plan. In *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1543 (10th Cir.1987), the court found that if the employer continues to apply a discriminatory policy and practice to a point within the relevant filing period, then the continuing violation doctrine applies. But the court has also noted that an unconstitutional employment termination is a completed one-time violation and subsequent effects do not give rise to a continuing violation. *Pike v. City of Mission, Kan.,* 731 F.2d 655, 660 (10th Cir.1984).

If plaintiff was effectively terminated on August 1, 1989, the later events are merely effects of the termination. Plaintiff mentions only two events occurring in the period for filing his claim: his denial of three weeks of vacation pay and the termination of his stock options. These incidents resulted from his termination. The stock option agreement notified plaintiff that the options terminated when employment ends. Denial of paid vacation time is also an effect of termination. Thus, for purposes of the two-year limitations period, the continuing violation theory is inapplicable and plaintiff's claim could not be saved under this theory. Conversely, if the termination date is September 28, 1989, the events described do not fall within the relevant filing period as required by the *Furr* decision and cannot support a continuing violation theory.

The continuing violation theory is unpersuasive no matter which date is used for termination purposes and will not extend the termination date for purposes of when the limitations period accrued.

 Plaintiff also raises a tolling argument with respect to the two-year statute of limitations. Equitable tolling is available when a plaintiff's unawareness of his ability to bring a claim—either unawareness of the facts necessary to support a discrimination charge or of his legal rights—is due to defendant's misconduct. Tolling is appropriate where a plaintiff is "terminated ignorant" of his rights. *Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 896 (1st Cir.1992). Ignorance of a filing deadline may be excusable where it is caused either by the misconduct of the employer or by the failure of that employer to post informational EEOC notices required by the ADEA. *Id.* If evidence establishes that the employer actively misled or deceived the employee, the limitations period should be equitably tolled. *Cottrell v. Newspaper Agency Corp.,* 590 F.2d 836, 838–39 (10th Cir.1979). Tolling ends, however, once an employee receives actual notice of his statutory rights or retains an attorney. *Kale v. Combined Ins. Co.,* 861 F.2d 746, 752 (1st Cir.1988).

Plaintiff's only evidence that his failure to meet the filing deadline was caused by active misconduct on the part of defendant may be found in his termination. Plaintiff alleges that defendant was less than clear about his termination; the allegation is that defendant failed to make the termination unequivocal. Because plaintiff was not even sure he was fired until September, he was prevented from filing a timely complaint.

Defendant alleges, but does not supply evidence, that plaintiff had legal counsel from the time of his meeting in August of 1989. No such evidence, however, has been submitted to this court.

This argument by plaintiff is merely repetitive of the general claim that plaintiff was not terminated until September 28, 1989. If a jury finds that plaintiff was terminated on August 1, 1989, then plaintiff has no claim that he was misled by the equivocal statements of defendant. If, however, a jury finds that September 28, 1989 was the termination date, then the tolling argument is moot because plaintiff's claim is timely. In light of the factual dispute regarding the termination date, this court need not address the issue of equitable tolling.

The above stated analysis has assumed that the two-year statute of limitations ap-

plies to plaintiff's claim. If the act was done willfully, however, the applicable statute of limitations is three years, not two: "[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

■ The Supreme Court has held that the willful standard for the three-year limitations period is met where the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 635 (10th Cir. 1988). The Tenth Circuit has further modified the definition by holding that a factfinder must find that age was the "predominant factor in the employer's decision" to support a willful violation of the ADEA. *Id.* at 636. This standard of the Tenth Circuit has, however, been recently overruled by the Supreme Court as too stringent a standard. In *Hazen Paper Co. v. Biggins,* No. 91–1600, 1993 WL 117592 (Jan. 13, 1993), the Supreme Court held that in ADEA cases the definition of willful should focus on if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at *8. The plaintiff need not prove that age was the predominant, rather than the determinative, factor in the employment decision.

■ Any such question of intent is disfavored as an issue to be disposed of on a summary judgment motion. 6–Pt. 2 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.17[41–1] (1993). Whether defendant had knowledge of its conduct violating the statute or showed reckless disregard for that fact is disputed and should not be resolved on this motion for summary judgment.

In summary, the ADEA claim is surrounded by factual dispute. The termination date is disputed—was it August 1, 1989 or September 28, 1989? If September 28, 1989 is the termination date, plaintiff's claim filed on August 21, 1991 is timely under either the two-year or three-year statute. If August 1, 1989 is the termination date, plaintiff's claim is time barred unless the employer's action was willful and the three-year limitations period applies. Willfulness is surrounded by the factual dispute over defendant's intentions.

Thus, defendant's motion for summary judgment with respect to plaintiff's ADEA claim will be denied.

*Breach of Implied Employment Contract*

An exception to the employment at will doctrine may exist where employees can show an "implied-in-fact" contract. Kansas courts have recognized an "implied obligation on the part of the employer not to terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Morriss v. Coleman Co.,* 241 Kan. 501, 509, 738 P.2d 841 (1987). Where the allegation is one of implied contract, the understanding or intent of the parties must be ascertained from any negotiations between the parties, the conduct of the parties, the situation giving rise to the employment relationship, the type of employment, and other circumstances surrounding the relationship that might explain the intentions of the parties. *Id.* at 513, 738 P.2d 841; *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984).

The existence of an implied contract of employment is almost always a question of fact and therefore inappropriate for resolution on a motion for summary judgment. *Courtney v. Safelite Glass Corp.,* No. 91–2223–L, 1992 WL 223795 (D.Kan. Aug. 26, 1992); *Johnson v. City of Wichita,* 687 F.Supp. 1501, 1507 (D.Kan.1988); *Morriss,* 241 Kan. at 512, 738 P.2d 841.

■ No express contract governed plaintiff's employment with defendant. But plaintiff argues that representations made to him legitimately created a valid expectation of continued employment for a specific duration. Plaintiff contends that Mr. Malbin, the CEO of Safelite, guaranteed his employment as long as he performed his work satisfactorily. Also, plaintiff points to a written policy set-

ting forth guidelines for terminating employees.

Defendant argues that the unequivocal terms of the stock option agreement state that plaintiff's employment could be terminated at any time for any reason and therefore demonstrate that the employment situation was at will. Defendant cites *Plummer v. Humana of Kansas, Inc.*, 715 F.Supp. 302, 304 (D.Kan.1988), as support for its argument that such an agreement precludes finding an implied-in-fact contract. But defendant misunderstands the *Plummer* decision. In that case, the court found that the employment handbook, which contained provisions similar to the stock option agreement in this case, did not create an implied-in-fact contract. The court also stated that no evidence of other intentions was submitted to the court and therefore summary judgment was proper.

In the present case, however, plaintiff has submitted oral representations as evidence that an implied-in-fact contract was created. No one is arguing that the stock option agreement creates this type of employment contract; instead, the oral representations, along with defendant's policies of employment and termination, create plaintiff's employment situation. No evidence such as this was submitted to the *Plummer* court.

Parties may become contractually obligated by their nonverbal conduct as well as by their use of oral or written words. *Allegri*, 9 Kan.App.2d at 664, 684 P.2d 1031. Although the employee's subjective understanding is not enough, a mutual intent to employ plaintiff as long as he did his job satisfactorily could be based upon factors such as longevity with the employer and excellent performance evaluations. *Id.* But, an expectation of remaining with the employer as long as one performs his duties properly creates merely a unilateral expectation, even if the expectation is generated by verbal communications of the employer. *Harris v. Board of Public Utils. of Kansas City*, 757 F.Supp. 1185, 1190 (D.Kan.1991).

Our situation is identical to the one before Judge Lungstrum in *Courtney*. The court held that viewing the comments by Mr. Malbin objectively and drawing all reasonable inferences from them, one could argue that Safelite intended to retain plaintiff as long as his performance remained satisfactory. Also, the court found that there was a written policy setting forth guidelines for use in terminating employees. Thus, the court concluded that genuine issues of fact precluded granting defendant's summary judgment motion.

The problem in the present case stems from the theory of preemption. Defendant argues that because plaintiff is limited to the statutory remedies available under the ADEA, a pendent claim for breach of an implied-in-fact contract should be dismissed. Defendant cites *Smitley v. Cigna Corp.*, 640 F.Supp. 397, 401 (D.Kan.1986), for the proposition that the court should not recognize a claim for breach of an implied-in-fact contract in the age discrimination context. Defendant has, however, misread the opinion. The claim in *Smitley* was one for breach of an implied covenant of good faith and fair dealing, not one for breach of an implied-in-fact contract. The difference is important because Kansas law does not recognize a claim for breach of the covenant of good faith and fair dealing in employment termination cases. Thus, the court held that the plaintiff did not have a remedy.

In the present case, plaintiff is claiming a breach of an implied contract, and so *Smitley* does not control. Defendant's claim that plaintiff is limited to the remedies under the ADEA, however, is persuasive. There is no case law holding that the remedies under ADEA preclude this type of claim, and in fact, several courts have allowed a breach of an implied contract claim to coexist with an ADEA claim. *Hurd v. Pittsburg State Univ.*, No. 92–2253–JWL, 1993 WL 105133 (D.Kan. Mar. 2, 1993); *Courtney*; *Berry v. General Motors Corp.*, 796 F.Supp. 1409, 1415 (D.Kan.1992). These cases, however, seem inconsistent with the very notion of preemption. Plaintiff's only allegation in this termination case is that he was fired because of his age. Plaintiff claims that the breach of an implied contract also arose from defendant terminating plaintiff because of his age. Thus, the ADEA should provide plaintiff with his sole remedy. The factual allegations

forming the basis for the two claims, as well as the available damages, are the same. Thus, plaintiff's remedy should be limited to his claim under the ADEA.

For the above stated reasons, this court will grant defendant's motion for summary judgment.

### Breach of Stock Option Agreement

■ Paragraph 11 of the Stock Option Agreement states that the agreement may be amended by the corporation provided that the modifications do not "adversely affect the Optionee's rights hereunder." To adversely affect an optionee's rights under the agreement requires the consent of the optionee. (Stock Option Agreement, ¶ 9.)

Paragraph 6.3(b) of the agreement provides that the purchase price of the stock granted under the option will be determined upon the termination of the employee. Specifically, the calculation will be made at the "end of the fiscal year immediately preceding the year in which the termination occurred." The fiscal year in this case ended on June 30, 1989.

Plaintiff argues that shortly after the end of the relevant fiscal year, defendant amended the book value of the stock. Thus, the option price paid to plaintiff, who was terminated shortly thereafter, would be reduced.

Defendant contends that when plaintiff was terminated, his option was redeemed in full accordance with the contractual formula to which the parties agreed. The contractual formula merely states that the redemption price will be the difference between the option price and the adjusted book value of the stock as of the end of the fiscal year immediately preceding the year in which termination took place. (Stock Option Agreement, ¶ 6.3(b).) Although defendant may have redeemed the value in accordance with the contractual formula, the book value element of that formula had been altered. Defendant modified the book value and there is some dispute concerning whether the plaintiff was adversely affected by this change. If so, there may be a claim for breach of paragraph 11 of the agreement. Although the parties discuss the agreement and its modifications,

they do not address the issue of what effect the changes had on plaintiff's redemption. Thus, there is a factual question left open.

Defendant's motion for summary judgment with respect to the claim of the breach of the stock option agreement will be denied.

### Breach of Good Faith and Fair Dealing in the Stock Option Agreement

■ Paragraph 10 of the Stock Option Plan, incorporated by reference into the stock option agreement, states that the parties shall look to Delaware law to settle disputes arising out of the agreement. Because the parties agreed to look to Delaware law to settle disputes under this contract, this court will look to Delaware law to resolve the issue of breach of good faith and fair dealing. In Delaware, every contract has an obligation of good faith and fair dealing which is implied into the agreement by law. *Blish v. Thompson Automatic Arms Corp.*, 64 A.2d 581, 597 (Del.1948); Restatement (Second) of Contracts § 205 (1981).

Good faith and fair dealing requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of that contract. *R.M. Williams Co. v. Frabizzio*, No. 90C–MY–10, 1993 WL 54423 (Del.Super. Feb. 8, 1993). Thus, the good faith and fair dealing implicit in contracts emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

The stock option agreement in this case was used to induce executives to stay with defendant company. Plaintiff argues that by firing plaintiff before he was fully vested in his stock option, defendant saved money on the option.

But plaintiff shows that the inducement was made in 1987. Plaintiff, however, was fired in 1989. Plaintiff has not shown that the statements were made with the intent of tricking plaintiff to stay with the company knowing that they would later fire him. There is nothing to suggest that defendant did not enter the contract with the full intent of fulfilling its obligations if plaintiff's perfor-

mance was sufficient. Furthermore, plaintiff has presented no evidence that defendant acted arbitrarily or unreasonably and thereby prevented plaintiff from enjoying the fruits of the option. According to plaintiff, "Pohlit became aware of plaintiff's participation in the Stock Option Plan in April, 1989, shortly after he replaced plaintiff." (Pltf.'s Statement of Material Fact, ¶ D. 20.) Thus, there is no inference that the defendant employer terminated plaintiff to prevent his realization of an employee benefit.

Defendant's actions with respect to the stock option plan were reasonable. Defendant increased reserve accounts to take care of bad debts, and thereby caused the value of plaintiff's option to depreciate. Adjustments to the number and class of stocks were made when the company was recapitalized, and this was done to retain benefits in the agreed upon proportions. Part of the recapitalization also resulted in issuing a dividend. These actions can be explained from a business standpoint. For plaintiff to suggest that these actions constitute a violation of the good faith implicit in the stock option agreement, however, plaintiff would have to submit some evidence of unreasonable conduct that prevented plaintiff from enjoying the fruits of the contract. Plaintiff has submitted only bare allegations.

Without more, defendant's motion for summary judgment with respect to the claim for breach of the implied covenant of good faith and fair dealing will be granted.

IT IS ACCORDINGLY ORDERED this 27th day of April, 1993, that defendant's motion for summary judgment (Dkt. No. 50) is granted in part and denied in part, as follows: (1) with respect to plaintiff's claims for breach of implied contract of employment and breach of covenant of good faith and fair dealing in the stock option agreement, the motion is granted; and (2) with respect to plaintiff's ADEA claim and his claim for breach of stock option agreement, the motion is denied.

At the time of oral arguments, plaintiff withdrew his claim regarding misrepresenta-tion, and thus, that claim was not under consideration by the court.