Herbert D. CONYERS, Jr., Plaintiff,

v.

SAFELITE GLASS CORP., Defendant.

Civ. A. No. 91–1179–MLB.

United States District Court,
D. Kansas.

June 23, 1993.

William H. Dye, Foulston & Siefkin, Wichita, KS, for plaintiff.

Eldon L. Boisseau, Turner & Boisseau, Chartered, Terry L. Mann, William Robert Martin, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on the motion of defendant for partial summary judgment and/or dismissal. (Doc. 79). Plaintiff alleges that defendant terminated him from defendant's employ on the basis of plaintiff's age. Plaintiff brings this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the Kansas Act Against Discrimination

("KAAD"), K.S.A. §§ 44–1001 *et seq.;* and a common law claim of breach of an implied employment contract. In the present motion, defendant seeks judgment only on plaintiff's implied contract claim.

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir. 1991). In addition, "[a] genuine issue 'must be predicated on a viable legal theory.'" *Windon Third Oil & Gas v. FDIC,* 805 F.2d 342, 346 (10th Cir.1986) (citation omitted), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## I. *Exclusivity of Statutory Remedies*

■ Defendant argues that plaintiff's implied contract claim must be dismissed be-

cause the ADEA and the KAAD provide the exclusive remedies available to a Kansas plaintiff who alleges illegal age discrimination in employment.[1]

Defendant relies on *Polson v. Davis,* 635 F.Supp. 1130, 1149 (D.Kan.1986), *aff'd,* 895 F.2d 705 (10th Cir.1990), where Judge O'Connor refused to recognize a tort cause of action for wrongful discharge in retaliation for opposing an employer's discriminatory practices. In *Polson,* the plaintiff sought to maintain her tort claim under the "public policy exception" to the Kansas employment-at-will doctrine. *See Murphy v. City of Topeka,* 6 Kan.App.2d 488, 630 P.2d 186 (1981) (recognizing tort action for termination of an at-will employee in retaliation for filing a workers' compensation claim); *Kistler v. Life Care Centers of Am.,* 620 F.Supp. 1268, 1270 (D.Kan.1985) (termination in retaliation for testifying at an unemployment compensation hearing). *Polson* rejected this attempt, however, by relying on the rationale of *Tarr v. Riberglass, Inc.,* No. 83–4234, 1984 WL 1481 (D.Kan. Feb. 6, 1984), where Judge Rogers declined to recognize a tort cause of action under the public policy exception in the case of an employee who had an adequate remedy for age discrimination under Kansas and federal statutory law. Because Title VII and the KAAD already prohibit retaliatory discharge for opposing an employer's discriminatory practices, *Polson* declined to extend the exception to include a new tort cause of action based on the same improper motive. On appeal, the Tenth Circuit affirmed, "hold[ing] that plaintiff's reme-

---

1. Defendant also asserts, without elaboration, that the ADEA and the KAAD "preempt" a Kansas breach of implied employment contract claim for termination based on age. (*See* Doc. 79, at 6; Doc. 86, at 6). The court, however, considers defendant's only argument to be that Kansas itself does not recognize a cause of action for breach of implied contract when the plaintiff alleges employment discrimination on the basis of age. A true federal preemption argument would require an examination of whether Congress, in enacting the ADEA, intended to exercise its powers under the Supremacy Clause to abrogate rights or duties that the state law would otherwise recognize. *See, e.g., Rose v. Arkansas State Police,* 479 U.S. 1, 3–4, 107 S.Ct. 334, 335, 93 L.Ed.2d 183 (1986) (per curiam); *but cf.*

*Hartig v. Safelite Glass Corp.,* 819 F.Supp. 1523, 1533–34 (D.Kan.1993) (concluding that coexisting implied contract and ADEA claims "seem inconsistent with the very notion of preemption"). Defendant has provided the court with no argument as to a congressional intent to preempt state law, and thus, defendant has failed to sustain its burden as to any such argument. *See Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 959 F.2d 158, 161 (10th Cir.1992), *adhered to on remand,* 981 F.2d 1177, *pet. for cert. filed,* 61 U.S.L.W. 3789 (U.S. May 10, 1993); *see also Phillips v. Calhoun,* 956 F.2d 949, 953–54 (10th Cir.1992) (court may properly reject an argument unsupported by any authority or reason for lack of authority).

dies under Kansas statutory law preclude recovery under the *tort* of wrongful discharge." 895 F.2d at 709 (emphasis added)[2]. *See also Johnson v. Wefald*, 766 F.Supp. 977, 984 (D.Kan.1991); *Kalinowski v. Boeing Co.*, 8 Indiv.Empl.Rts.Cas. (BNA) 158, 1992 WL 321613 at *3 (D.Kan. Oct. 1, 1992) (no retaliatory discharge exception for voicing disfavor with race and sex discrimination); *Ridge v. HCA Health Servs. of Kansas, Inc.*, No. 91–1280–PFK, 1992 WL 363686, at *8 (D.Kan. Nov. 3, 1992); *Jonker v. Melvin Simon & Assocs., Inc.*, No. 86–1654, 1989 WL 31402 at *12 (D.Kan. Mar. 1, 1989) ("As to the public policies protected by the ADEA, plaintiff's remedies exist under that Act alone and are not also available on an abusive discharge claim.").

The court finds the rationale of *Polson* to be inapposite to the issue presented in this case. In *Polson* and similar cases, the plaintiffs attempted to maintain a *tort* action by seeking recognition of a new illegal motive under the public policy exception to the employment-at-will doctrine. The essence of those Kansas decisions recognizing a tort action for wrongful discharge is that the law imposes a duty upon all employers to refrain from discharging employees when this action violates important public policies. *See Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 816, 752 P.2d 645 (1988) (public policy against discharge for absences due to work-related injuries); *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988) (termination of employee for whistle-blowing is an actionable tort). When, however, Congress or the Kansas legislature has already seen fit to embody that same public policy in an adequate statutory remedy such as the ADEA or the KAAD, *Polson* and *Tarr* instruct courts to defer to the remedies and procedures created by the legislature for the vindication of those policies.

An implied contract of employment stands on different footing. The implied contract theory is distinct from the public policy exceptions to the employment-at-will doctrine. *Morriss v. Coleman Co.*, 241 Kan. 501, 509, 738 P.2d 841 (1987). The duties imposed under an implied employment contract arise not as a creation of the courts or the legislature out of public policy concerns, but by the implied agreement of the parties. *See id.* And unlike the "limited" public policy exception recognized for the protection of at-will employees, *id.* at 513, 738 P.2d 841; *Polson*, 895 F.2d at 709, an employee under an implied contract of employment is not an at-will employee and does not appeal to any public policy as the source of his employment rights. Rather such a plaintiff asks only for the enforcement of his legitimate expectation of continued employment as understood and intended by the parties. *See Morriss*, 241 Kan. 515 at syl. ¶ 1, 738 P.2d 841.

Moreover, in contrast to a tort or statutory cause of action sounding in wrongful discharge—either of which simply prohibits certain pernicious motives as the basis for adverse employment decisions—an implied contract of employment carries an expectation of continued employment and broadly prohibits termination except "for good cause." *See Copple v. City of Concordia*, 814 F.Supp. 1529, 1535–36 (D.Kan.1993). For this reason, it does not necessarily follow that a claim for breach of an implied contract of employment is duplicative of the rights created and remedies available under the ADEA or KAAD. *See Hall v. Great Western Bank*, 231 Cal.App.3d 713, 282 Cal.Rptr. 640 (1991) (recognizing distinction between state law against retaliatory discharge based on public policy, and federal regulation allowing recovery of contract benefits for the lesser wrong of terminating without cause); *but see Hartig v. Safelite Glass Corp.*, 819 F.Supp. 1523,

---

**2.** Contrary to defendant's argument, the Tenth Circuit in *Polson* did not "clearly" hold "that the KAAD provides the exclusive remedy for wrongful discharge based on breach of an oral contract." (Reply, Doc. 86, at 7). In fact, the court expressly prefaced its discussion by noting that the plaintiff did not challenge on appeal the district court's conclusion that her employment was "at will." 895 F.2d at 707. Thus, the oral contract claim—which was dismissed by the district court for lack of an authorized offer, 635 F.Supp. at 1149, and was not even mentioned in the appellate decision—was abandoned on appeal. *Polson* only precluded recognition of a wrongful discharge claim based in tort and did not effect a *sub silentio* wholesale abrogation of the right of parties to enter into employment contracts that provide for rights greater than those available under statutory discrimination laws.

1533–34 (D.Kan.1993). Even if the employee does not prevail on his claim that age was the determinative factor in his discharge, proof of the existence of an implied contract of employment still allows the employee to recover if he was discharged for *no* cause.[3]

The court concludes that Kansas allows a cause of action for breach of an implied contract of employment even if the employee also claims that he was terminated as a result of illegal age discrimination.

## II. Existence of Implied Contract

■ Alternatively, defendant argues that plaintiff has no claim for breach of an implied contract of employment because the facts do not support the claim that such a contract existed.

Where it is alleged that an employment contract is one to be based upon the theory of "implied in fact," the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, syl. ¶ 1 (1987). Although the existence of an implied contract of employment is normally a question of fact for the jury, *Morriss*, 241 Kan. at 512, 738 P.2d 841; *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 134, 815 P.2d 72 (1991), and almost always inappropriate for a summary judgment resolution, *Hartig,* 819 F.Supp. at 1532–33, summary judgment may be granted if the plaintiff presents only evidence of his own unilateral expectation of continued employment. *See Copple v. City of Concordia,* 814 F.Supp. 1529, 1536–37 (D.Kan.1993).

Plaintiff relies on the following evidence, which is either uncontroverted or viewed in a light most favorable toward plaintiff.

Plaintiff began working for Safelite on January 13, 1975, as operations manager of the company's Wichita division, which includes four stores. In October 1975, plaintiff was transferred to Denver to be General Manager of Safelite's ten stores in Colorado, which position plaintiff held until April 1, 1976. In April 1976, defendant's Executive Vice President—R.W. Hall—brought plaintiff back to Wichita and promoted plaintiff to Vice President of Retail Operations. Plaintiff voluntarily left defendant's employ in November 1979 for a period of approximately seven months. Through the early months of 1980, R.W. Hall—who was then President of Safelite—frequently called plaintiff and requested that he return to the company. Plaintiff returned to Safelite on July 15, 1980 to run the Kansas City division, which included ten stores. Plaintiff returned because defendant offered him a substantial increase in salary.[4] Plaintiff was transferred back to Wichita on September 1, 1987, where he became district manager responsible for the ten stores in Kansas.

Plaintiff was terminated on June 30, 1989. Plaintiff never received an unfavorable job performance evaluation while employed at

---

3. Contrary to defendant's belief, this rationale does not change simply because plaintiff in this case alleges that age was the sole reason for his discharge. Plaintiff has also alleged that he believes he could be terminated only for cause, and that defendant lacked cause to terminate him. (Pl. Depo. at 43–44). As stated, it is possible that plaintiff may not prevail on his claim of unlawful age discrimination, yet this does not prevent plaintiff from pleading, and proving, an alternative claim for relief. *See* Fed.R.Civ.P. 8(a), (e)(2).

4. Apparently, however, plaintiff desired to maintain his residence in Wichita, and his wife remained in Wichita for five years while plaintiff commuted home from Kansas City on weekends. (Plaintiff's Statement of Fact ¶ A.8). This arrangement was acknowledged in an "Employment Agreement" between plaintiff and defendant signed on July 15, 1980. (Ext. C. to Def. Memo. in Support, Doc. 79). By letter dated October 24, 1983, plaintiff was given written notice that the employment agreement was cancelled. (*Id.* Ext. D). The cancellation letter states that "Safelite cannot guarantee or hold open a position in the division office for you."

Safelite, and was never told that his performance was deficient in any respect. Defendant told plaintiff that he was being terminated due to a corporate reorganization.

Plaintiff also relies on Safelite's personnel manual. This personnel manual sets forth certain procedures to be followed in the event an employee's performance falls below acceptable levels. Plaintiff alleges that no Safelite employee was allowed to be terminated unless these procedure were followed, and that they were not followed in plaintiff's case.

Under the facts of this case, the court finds sufficient evidence to submit plaintiff's implied contract theory to a jury. Plaintiff was employed by defendant for approximately 15 years, broken only by a seven month period 10 years before his termination. When he voluntarily left, defendant actively sought plaintiff's return and offered him a substantial increase in salary. The longevity of the plaintiff's employment; the fact that the plaintiff was requested to rejoin the defendant's employ after having voluntarily left; and the defendant's apparent satisfaction with the plaintiff's performance are all factors supporting an inference of an implied contract of employment. *Brown*, 249 Kan. at 133–34, 815 P.2d 72 (quoting *Allegri v. Providence–St. Margaret Health Center*, 9 Kan. App.2d 659, 664, 684 P.2d 1031 (1984)).

In addition, although personnel rules which are not bargained for cannot alone be the basis for an express or implied contract of employment, *Copple*, 814 F.Supp. at 1536, the personnel manual provides additional evidence of a mutual understanding that termination would only be for cause. The manual sets forth a procedure for addressing substandard or otherwise problematic job performance. Except for certain specified infractions warranting immediate dismissal, the employee is to be given opportunity to correct his performance or conduct. Although the manual does not state that an employee may be terminated only for cause, neither does it state that an employee may be terminated without cause. Moreover, plaintiff has testified that he had been instructed to follow the manual's procedures and not to terminate employees without cause. *See Morriss*, 241 Kan. at 505, 738

P.2d 841 (plaintiff supervisor had himself "utilized the personnel manual and was well aware of the company's policy of terminating employees only for good cause"); *Brown*, 249 Kan. at 138, 815 P.2d 72 (orally stated policy not to terminate except for cause is relevant, notwithstanding contrary written policy).

Defendant raises two objections to any reliance on the policy manual. First, defendant argues that the manual only applied to hourly and weekly employees, as reflected by its title, and that plaintiff was a salaried employee. Despite its title, defendant's argument is undercut by the "Certificate of Compliance" with the personnel manual that defendant required plaintiff to sign. (Attachment 2, Doc. 83). By binding plaintiff to the duties set forth in the manual, defendant evinced an intent that the manual also applied to plaintiff.

Second, defendant contends that plaintiff was not terminated for poor job performance—which is the only situation addressed by the manual. According to defendant, a corporate reorganization eliminated plaintiff's position, and plaintiff was the least qualified candidate for the positions that remained after the reorganization. (Knapp Depo. at pp. 115–16, Doc. 83). Defendant's proffered reason for termination, however, goes only to the issue of whether plaintiff was in fact terminated for cause, not whether an implied contract existed allowing discharge only for cause. Regardless of the reason for terminating an employee, the existence of disciplinary procedures known to the employee may be evidence of a mutual understanding that termination would be only for cause. *See Brown*, 249 Kan. at 138, 815 P.2d 72.

Considering all the evidence, the court finds that plaintiff has demonstrated the existence of a genuine issue of fact with regard to an implied employment contract.

Accordingly, the court denies the motion of defendant (Doc. 79) for partial summary judgment on plaintiff's claim of breach of implied employment contract.

**IT IS SO ORDERED.**